UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                    CRIMINAL CASE NO. 3:09CR002

BOBBY DELAUGHTER

### GOVERNMENT'S COMBINED MEMORANDUM OF AUTHORITIES AND RESPONSE TO DEFENDANT DELAUGHTER'S MOTION TO DISMISS COUNTS TWO, THREE AND FOUR FOR FAILURE TO CHARGE AN OFFENSE

Comes now the United States of America by and through the United States Attorney for the Northern District of Mississippi, and in response to the defendant Delaughter's "Motion to Dismiss Counts Two, Three and Four for Failure to Charge an Offense" would respectfully show unto the Court as follows, to-wit:

Counts Two, Three and Four of the Indictment charge defendant Bobby Delaughter with honest services mail fraud in violation of 18 U.S.C. §§ 1341 and 1346. Those counts charge the defendant, as a public officer and duly elected official serving the State of Mississippi in the capacity of circuit court judge for Hinds County, Mississippi, with having violated his oath, the Code of Judicial Conduct, and the statutes of the State of Mississippi while the presiding judge assigned to the case of Wilson v. Scruggs. It is specifically alleged that he deprived the plaintiff Wilson and the citizens of the State of Mississippi of their intangible right to the honest services of a circuit court judge who had both an ethical and statutory obligation to perform his duties impartially, without affording either side an unfair advantage or secret access to the court. It is specifically alleged that the purpose of the scheme was to ensure that Scruggs enjoyed an unlawful advantage, something the defendant never disclosed to the plaintiffs in that case.

In his motion to dismiss, the defendant complains first that Counts Two, Three and Four did not specifically allege a state law violation. Next, he complains that the counts in question did not allege either bribery or material non-disclosure. He avers that the three mailings alleged were required by state law and therefore cannot serve as the basis for mail fraud charges, and finally, he opines that if all else fails the statute is void for vagueness.

## DISCUSSION

In 1987 the United States Supreme Court limited the application of Title 18, United States Code, Section 1341 to the protection of property rights, holding that the intangible right of citizens to the honest and faithful services of public servants was not protected by the statute:

> Rather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves a federal government in setting the standards of disclosure and good government for local and state officials, we read Section 1341 as limited in scope to the protection of property rights. If Congress desires to go further, it must speak more clearly than it has.

McNally v. United States, 483 U.S. 350, 360 (1987).

So, Congress spoke. In 1988 it passed Title 18, United States Code, Section 1346:

> For the purpose of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

Much has been said about those 28 words. Is the statutory prohibition specific enough to preclude overzealous prosecutions for something that is essentially an ethical violation? Does the statute offend traditional notions of federalism? Is it overly broad or impermissibly vague? Does it put citizens on notice of what conduct is prohibited? Since 1988 those questions have been addressed by every circuit in the country, perhaps most recently by Mr. Justice Scalia in his dissent from the Supreme Court's denial of certiorari in the Seventh Circuit case of Robert

2

<u>Sorich v. United States</u>, 555 U.S. _____ (2009).  The Seventh Circuit affirmed <u>Sorich</u>'s

conviction, and a majority of the Supreme Court apparently concurred, denying certiorari.

However, Justice Scalia's dissent is relevant as it articulates most of the concerns that have

arisen in honest services mail fraud cases nationwide.  In his dissent, Justice Scalia notes that

only the Seventh Circuit requires proof of private gain in honest services fraud cases, while the

remaining circuits, including the Fifth, do not require that the defendant realize any benefit

whatsoever from his involvement in the scheme and artifice to defraud.  Justice Scalia has two

principle concerns about the application of the statute.  First, he worries that overzealous federal

prosecutors might use the statute to criminalize  ethical violations by state officials.  Secondly,

he worries that the statute might not give fair notice of what conduct is proscribed.  The case law

in this circuit has addressed both those concerns.

       The Fifth Circuit stands alone among the circuits in requiring that the conduct underlying

a 1341/1346 prosecution must also violate state law.  <u>United States v. Brumley</u>, 116 F.3d 728 (5th

Cir. 1997):

> We decide today that services must be owed under state law and
> that the government must prove in a federal prosecution that they
> were in fact not delivered.  We do not reach the question of
> whether a breach of a duty to perform must violate the criminal
> law of the state.

<u>Brumley</u> at 734.  Michael Brumley was a regional associate director of the Texas Industrial

Accident Board, which administered the state's workers compensation law.  From 1987 to 1992

Brumley accepted "loans" totaling $86,730 from John Cely, an attorney whose firm enjoyed a

substantial workers compensation practice.  Cely and his associates made frequent appearances

before Brumley in prehearing conferences.  However, at trial the government stipulated that it

would not try to prove that any IAB (Industrial Accident Board) award was enhanced by Brumley or that any claimant was awarded more money by Brumley, or that Brumley referred any unrepresented claimant to an attorney in return for cash." Brumley at 735. The cozy relationship that Brumley enjoyed with Cely and his associates (undisclosed to counsel opposite) was in the Fifth Circuit's estimation sufficient to constitute honest services fraud. The Brumley court, *in dicta*, noted that "a sitting state official with adjudicatory authority who accepts payments from lawyers practicing in front of him and simultaneously acts for those lawyers in his official capacity contrary to his state law duty has provided dishonest services . . . ." Id. Noting that Brumley's conduct was in violation of a state criminal statute, the Fifth Circuit affirmed his conviction, holding that "the tension inherent in federal criminalization of conduct by state officials innocent under state law is absent here. Id. The Brumley court also cited a 70-year-old Fifth Circuit opinion for the proposition that "No trustee has more sacred duties than a public official and any scheme to obtain an unfair advantage by corrupting such a one must in the federal law be considered a scheme to defraud." Shushan v. United States, 117 F.2d 110, 115 (5th Cir.), cert. denied, 313 U.S. 574, 61 S. Ct. 1085 (1941).

In the case at bar, the evidence will show that Scruggs lawyers paid former District Attorney Ed Peters $1,000,000 to influence Bobby Delaughter and to obtain secret access to the court for the Scruggs legal team. Although he never entered an appearance as an attorney of record in the case, Ed Peters met secretly with Judge Delaughter on a number of occasions, lobbying the judge on behalf of Scruggs and acting as an intermediary for information passing back and forth between Judge Delaughter and the Scruggs legal team. Joseph C. Langston, as counsel for Richard F. "Dickie" Scruggs, sent word to Judge Delaughter, by way of Ed Peters,

4

that Scruggs could help Delaughter with his well known aspiration to become a federal judge.

Shortly thereafter United States Senator Trent Lott telephoned Delaughter asking if he would be

interested in a federal judgeship, and explaining that his brother-in-law (Dickie Scruggs) had

told him what a "fine judge" Delaughter was.  None of these ex parte contacts were ever made

known to the plaintiff, Wilson, or his attorneys.

By statute, the Mississippi Supreme Court has oversight authority over state circuit court

judges, and the authority to enforce the Code of Judicial Conduct.  Circuit Judge Bobby

Delaughter violated not only his statutory oath of impartiality, but also the Code of Judicial

Conduct and, perhaps most importantly in the context of this motion, he violated Mississippi

Code Annotated Section 97-11-53, a felony under state law.  That statute provides in pertinent

part that:

> No public official (defined elsewhere in the statute as any elected
> official of the State of Mississippi) shall directly or indirectly
> accept, receive, <u>offer to receive</u> or <u>agree to receive</u>  any . . .
> tangible or <u>intangible thing of value</u> as an inducement or incentive
> for . . . the accomplishment of any official act or purpose involving
> public funds or public trust. (emphasis added)

Although Delaughter did not receive a federal judgeship and may or may not have been under

serious  consideration for the job, he nevertheless made it clear to the Senator that he would be

more than happy to receive a federal judgeship, and in the context of this case, his hunger for

that judgeship clearly provided the inducement to provide Scruggs favorable findings of fact and

secret access to the court in violation of his oath and in violation of state law.  Delaughter

afforded Scruggs an ex parte preview of at least one order (the order that ultimately provided the

basis of Count Three) and made findings of fact that put Scruggs in the position of owing Wilson

no further damages (as reflected in the order that later provided the basis of Count Four), a huge

5

victory to the Scruggs legal team. That victory resulted in Peters being paid the last $950,000 of the aforesaid million as a "reverse contingency fee." As alleged in the indictment, the defendant agreed to accept a thing of value and thereafter afforded Scruggs special favors, and he concealed from the plaintiffs the fact that the court was secretly affording Scruggs a friendly ear.

An indictment must allege the elements of the offense, place the defendant on notice of what it is that he is to defend against, and protect him from a subsequent prosecution for the same offense. In considering a motion to dismiss an indictment, a district court must accept as true all factual allegations as set forth in that indictment. United States v. Kay, 359 F.3d 738 (5th Cir. 2004). The government must prove the following elements in a 1341/1346 honest services mail fraud: First, that the defendant knowingly participated in a scheme to defraud the citizens of the State of Mississippi of fair and honest services; and second, that the defendant did so knowingly and with the intent to defraud; and third, that for the purpose of carrying out the scheme, or attempting to do so, the defendant (or another acting in reasonably foreseeable furtherance of the scheme) caused the use of the United States mails. In Neder v. United States, 119 S. Ct. 1827 (1999), the United States Supreme Court added a requirement that materiality be proven to the jury. Materiality does not have to be specifically alleged if it can be reasonably inferred from the allegations set forth in the indictment, see United States v. Caldwell, 302 F.3d 399 (5th Cir. 2002), but it must be proven and the jury should be instructed that the scheme to defraud must be found to have employed false material representations or omissions. The government is not required to prove that the defendant ultimately received any benefit from the fraud, and in cases like Brumley, supra, and United States v. Holser, 816 F.2d 304, 208 (7th Cir. 1987), the Fifth and Seventh Circuits considered it irrelevant that the judge never ruled

6

differently because of a lawyer's willingness or unwillingness to make him a "loan".

In the case at bar, this defendant's misconduct from the bench strikes at the heart of the state judicial system, and is in violation of a state felony statute. The prosecution of this case goes far beyond an effort by overzealous federal prosecutors to criminalize an ethical violation and it relieves the Hinds County District Attorney of the unenviable task of prosecuting his own circuit judge.

Next the defendant invokes the relatively obscure "innocent mailing" doctrine set forth in Parr v. United States, 363 U.S. 370, 80 S. Ct. 1171 (1960), a holding that has since been ameliorated in the United States Supreme Court and the Fifth Circuit Court of Appeals. See Schmuck v. United States, 489 U.S. 705, 109 S. Ct. 1443 (1989), and United States v. Bright, 588 F.2d 504 (5th Cir. 1979). Under state law the mailings in Parr would have occurred irrespective of the defendants' fraud; the school district regularly used the mails to send tax notices and receive payments, and because the mailings were both routine and innocent, the Supreme Court held those mailings would have been made regardless of the defendants' fraudulent scheme and would therefore not support a mail fraud charge. Schmuck, on the other hand, mailed vehicle registration certificates as an integral part of his scheme to defraud, selling a number of vehicles with odometers that had been rolled back. Schmuck at 713. The Supreme Court found that "the mailing of the title registration forms was an essential step in the successful passage of title to the retail purchasers." Schmuck at 714. The Fifth Circuit likewise distinguished Parr in the Bright opinion:

> However, appellants ignore the crucial distinction between Parr and this case. Under state law, the mailings in Parr would have occurred irrespective of the defendants' embezzlement; the school district regularly used the mails to send tax notices and to receive

7

> payments. Here, by contrast, Mississippi's requirement of notice
> to the estate's creditors was triggered by the fraudulent scheme. If
> Whitten and Ray Bright had not decided to defraud the estate of
> their late cousin, they would not have had to comply with the state
> law requiring them to file the creditors' notice . . . . Appellants
> could have reasonably foreseen that the chancery court would
> follow its normal practice after they filed the notice to creditors, by
> publishing that notice in the local newspaper which reached most
> of the subscribers by mail.

Bright at 509-510. See also United States v. Krenning, 93 F.3d 1257 (5th Cir. 1996). In the case

*sub judice*, the Scruggs legal team had already paid Ed Peters $50,000 to corruptly influence

Bobby Delaughter so their corrupt scheme was in full swing when Joey Langston and Tim

Balducci mailed their entries of appearance to the court as alleged in Count Two. As in

Schmuck, the mailing was an essential step in the successful execution of their scheme. The

mailings contained in Counts Three and Four are also distinguishable from the innocent mailings

in Parr. The order which is the basis of Count Three was an integral part of the defendant's

participation in the fraudulent scheme, as it had already been e-mailed to Ed Peters for ex parte

review by the Scruggs team. Its subsequent mailing was hardly innocent. And finally, the order

which was mailed as the basis of Count Four likewise was an integral part of the defendant's

participation in the fraudulent scheme, in that it contained the ultimate finding of fact, adopting

Scruggs' position that he owed Wilson no further damages, and making Ed Peters' influence

worth every penny of the $1,000,000. None of the aforesaid mailings were innocent and all were

an integral part of the scheme and artifice to defraud.

      Finally, defendant Delaughter asserts that Section 1346 is void for vagueness. As regards

the enactment of Section 1346 in response to McNally v. United States, the Brumley court

opined that "Congress accepted the Court's invitation (to speak more clearly) and was clear in its

8

purpose . . . . Congress, in other words, announced that it wanted the courts to enforce the honest services doctrine developed in the years leading up to <u>McNally</u>." (emphasis added) <u>Brumley</u> at 732-733. As applied to the facts in this case, and in light of the defendant's oath, the Mississippi Code of Judicial Conduct and Miss. Code Ann. Section 97-11-53, Bobby Delaughter was clearly on notice of what conduct was proscribed by law. The indictment makes clear what he is to defend against and protects him from a subsequent prosecution for the same offense. As applied to this defendant and the circumstances of this case, the statute is neither vague nor ambiguous.

### Conclusion

Bobby Delaughter was a duly elected circuit court judge for Hinds County, Mississippi, entrusted under his oath with administering the law impartially. He violated his oath, the Code of Judicial Conduct, and the criminal statutes of the State of Mississippi by agreeing to accept and offering to accept a federal judgeship dangled before him by the Scruggs legal team, and by secretly and corruptly affording Scruggs unilateral access to the court not enjoyed by the plaintiff. The preferential treatment he afforded Scruggs included advance copies of orders, favorable findings of fact, and ultimately a decision that Scruggs owed Wilson no further damages. Additionally, evidence of other bad acts, offered pursuant to Federal Rule of Evidence 404(b), will show that Ed Peters secretly lobbied Bobby Delaughter in connection with at least one other case pending before the court. Given that course of conduct, Delaughter knew or should have known that Ed Peters, his close friend and political mentor, was not doing that for free.

9

The defendant's motion should be denied and overruled; Circuit Judge Bobby Delaughter should face a jury of his peers.

Respectfully submitted,

JIM M. GREENLEE
United States Attorney

*/s/ Robert H. Norman*
By:
    ROBERT H. NORMAN
Assistant United States Attorney
Mississippi Bar No. 3880

## <u>CERTIFICATE OF SERVICE</u>

I, ROBERT H. NORMAN, Assistant United States Attorney, hereby certify that I electronically filed the foregoing **GOVERNMENT'S COMBINED MEMORANDUM OF AUTHORITIES AND RESPONSE TO DEFENDANT DELAUGHTER'S MOTION TO DISMISS COUNTS TWO, THREE AND FOUR FOR FAILURE TO CHARGE AN OFFENSE** with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

John D. Cline, Esq.
jcline@jonesday.com

Thomas A. Durkin, Esq.
tdurkin@durkinroberts.com

Lawrence L. Little, Esq.
larry@larrylittlelaw.com

This the _9th_ day of ___April___, 2009.

_/s/ Robert H. Norman_____
ROBERT H. NORMAN
Assistant United States Attorney